**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DARRIN LYNN PICKENS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06-CV-343-TCK-TLW** |
| | ) | |
| **MARTY SIRMONS, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>OPINION AND ORDER</u>

This is a 28 U.S.C. § 2254 habeas corpus proceeding.  Petitioner is a state inmate and appears *pro se*.  On August 15, 2006, Petitioner filed an amended petition (Dkt. # 7).  Respondent filed a response (Dkt. # 14) to the amended petition, and provided the state court records (Dkt. # 15) necessary for adjudication of Petitioner's claims.  Petitioner did not file a reply. For the reasons discussed below, the Court finds the petition should be denied.

### *BACKGROUND*

Petitioner Darrin Lynn Pickens challenges his conviction entered in Creek County District Court, Case No. CRF-1990-66.  In resolving Petitioner's direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") provided a summary of the facts underlying Petitioner's conviction. Pickens v. State, 19 P.3d 866, 872 (Okla. Crim. App. 2001). In the absence of clear and convincing rebuttal evidence, that factual summary is entitled to a presumption of correctness.  See 28 U.S.C. § 2254(e)(1). The OCCA summarized the facts as follows:

> In the early morning of February 4, 1990, Pickens robbed the Mr. Quick 21 convenience store in Sapulpa. He shot the store clerk, Tommy Lee Hayes, four times. A customer found Hayes' body between 2:00 and 3:00 a.m. Hayes died from two of the gunshot wounds to the chest and abdomen. Three .38 caliber unjacketed lead bullets were found at the scene, and two more were recovered from Hayes' body. The store manager determined $180.33 was missing, and the last sale shown on the cash register occurred at 2:06 a.m.

Pickens was arrested in Tulsa on February 9, 1990 on unrelated charges. Tulsa police officers found a .38 caliber F.I.E. Titan Tiger Six Shot revolver in his car. At the time of his arrest, Pickens asked officers if he was being arrested for the Creek County crimes. Ballistics tests connected the revolver found in Appellant's car to the Tulsa crimes but did not positively identify it as the weapon used in the Sapulpa robbery/murder. However, on March 9, 1990, Pickens confessed to the crimes when he was interviewed on the Sapulpa charges.

See Pickens, 19 P.3d at 872.  In footnote 4 of its opinion, the OCCA explained the basis for

Petitioner's arrest in Tulsa,[1] as follows:

On February 8, 1990, Pickens robbed a Tulsa Circle K convenience store, killing the clerk by shooting her four times. On February 9, Pickens robbed another Tulsa Circle K and shot the clerk and was arrested while fleeing the scene of that crime. Pickens was convicted and sentenced to death and imprisonment on charges based on the Tulsa murder and robberies, and on appeal this Court affirmed that conviction in Pickens v. State, 1993 OK CR 15, 850 P.2d 328, *cert. denied*, 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994), *denial of post-conviction relief affirmed in 1996* OK CR 6, 910 P.2d 1063 (hereafter referred to as Pickens I or Tulsa case). Although the crime in this case preceded the Tulsa crimes, the trial in Tulsa County was held shortly before the first trial of this matter.

Id. at n.4.

Based on those events, Petitioner was convicted by a jury in Creek County District Court,

Case No. CRF-1990-66, of Murder in the First Degree While in Commission of a Felony of Robbery

With a Dangerous Weapon (Count I), Feloniously Carrying a Firearm (Count II), and Robbery With

Firearms, After Former Conviction of Two or More Felonies (Count III).  The jury found the

existence of four (4) aggravating circumstances and recommended a sentence of death on the murder

---

[1]The Court notes that Petitioner was sentenced to death in Tulsa County District Court, Case No. CF-1990-717, for the murder of a convenience store clerk in Tulsa County. See www.oscn.net. However, on March 14, 2000, Petitioner was granted habeas corpus relief as to the Tulsa County death sentence.  See Pickens v. Gibson, 206 F.3d 988, 997 (10th Cir. 2000).  Thereafter, on September 4, 2001, Petitioner accepted a sentence of life imprisonment without the possibility of parole in exchange for the State's agreement to strike the Bill of Particulars in the Tulsa County case.

2

conviction.  The jury also recommended that Petitioner be sentenced to ten (10) years imprisonment on Count II, and to life imprisonment on Count III.   The trial court sentenced Petitioner in accordance with the jury's recommendation.  Petitioner was represented at trial by attorneys J. Michael Busch and W. Creekmore Wallace, II.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA").  On appeal, he was represented by attorney William H. Luker. On November 14, 1994, in Case No. F-90-1297, the OCCA determined that Petitioner's videotaped confession had been obtained in violation of his constitutional rights and that its admission was not harmless error. As a result, the OCCA reversed and remanded the case for a new trial.  See Pickens v. State, 885 P.2d 678 (Okla. Crim. App. 1994), *overruled on other grounds by* Parker v. State, 917 P.2d 980, 986 & n.4 (Okla. Crim. App. 1996).

Petitioner was retried on the charges of Murder in the First Degree While in Commission of Robbery With a Dangerous Weapon (Count I), and Feloniously Carrying a Firearm (Count II).  He was convicted on both counts.  After finding the existence of three (3) aggravating circumstances, the jury recommended a sentence of death on Count I, and ten (10) years imprisonment on Count II.   On June 3, 1998, the trial court sentenced Petitioner in accordance with the jury's recommendation. Petitioner was represented by attorneys Joe Robertson and Robert Stubblefield.

Petitioner perfected a direct appeal to the OCCA.  Represented by attorneys William H. Luker and Jamie D. Pybas, Petitioner raised fifteen (15) propositions of error as follows:

> Proposition I:       Appellant's confessions to the homicide and robbery of Tommy Lee Hayes were improperly admitted into evidence because they were the fruit of an arrest which was not supported by probable cause.  The affidavit supporting the warrant omitted critical facts and contained material misstatements of fact.  Accordingly, the introduction of these statements violated Appellant's rights under the Fourth, Eighth, and

3

Fourteenth Amendments of the United States Constitution and Article II, §§ 7, 9, 20, and 30 of the Oklahoma Constitution.

Proposition II:     Appellant was denied his state and federal constitutional right to counsel by being subjected to custodial interrogation in Creek County by officers who were aware that he was already represented by counsel on other charges in Tulsa County, and who deliberately did nothing to contact his attorney or ask Appellant if he wanted to contact that attorney prior to, or during, the interrogation.

Proposition III:    The trial court committed error when it admitted Appellant's statements to the police into evidence because Appellant had previously asked to confer with counsel during a custodial interrogation in Tulsa County, only to have his request ignored.  It follows that the admission of any of Appellant's statements, whether related to the Tulsa offenses or the homicide in question, violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.

Proposition IV:     The evidence presented at trial was insufficient to sustain a conviction and a sentence of death under the requirement of the Eighth and Fourteenth Amendments to the United States Constitution, and under Article II, §§ 7 and 9 of the Oklahoma Constitution, because there was insufficient evidence, independent of Appellant's confession, to corroborate his admissions.

Proposition V:      The trial court committed reversible error by allowing the State to introduce in the first stage of trial evidence of Appellant's arrest in Tulsa for other crimes, and evidence of Appellant's other convictions, which had nothing to do with the offenses in question. By admitting the other crimes evidence the trial court violated Appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution.

Proposition VI:     The trial court committed reversible error by permitting the State to introduce evidence that the police took a pistol from Appellant's car without requiring the State to establish that the search and seizure were conducted pursuant to either a search warrant or a valid exception to the constitutional requirement for a search warrant. The introduction of this evidence under such circumstances violated Appellant's rights under the Fourth, Eighth, and Fourteenth

4

|  | Amendments to the United States Constitution and Article II, §§ 7, 9, and 30 of the Oklahoma Constitution. |
|---|---|
| Proposition VII: | The trial court erred in failing to *sua sponte* instruct the jury on the defense of voluntary intoxication and the corresponding lesser included, non-capital offense of second degree felony murder during the course of a robbery by force and fear. |
| Proposition VIII: | The improper tactics and arguments of the prosecutor deprived Appellant of a fair trial and a reliable sentencing proceeding, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution. |
| Proposition IX: | The trial record in this case is inadequate and incomplete, thus denying Appellant a fair opportunity for effective appellate review of his capital murder conviction and sentence in violation of the Sixth, Eighth and Fourteenth Amendments and Article II, §§ 7 and 9 of the Oklahoma Constitution. |
| Proposition X: | The record does not reflect a knowing and intelligent waiver of Appellant's right to present mitigating evidence in the sentencing stage of his capital trial, and therefore, the death penalty was imposed in violation of his Eighth and Fourteenth Amendment rights. |
| Proposition XI: | Mr. Pickens' death sentence should be vacated because the execution of the mentally retarded constitutes cruel and unusual punishment. |
| Proposition XII: | Appellant's death sentence must be vacated because Oklahoma's "murder to avoid arrest or prosecution" aggravating circumstance is unconstitutionally vague and overly broad as construed by this Court, in violation of the Eighth and Fourteenth Amendments. |
| Proposition XIII: | The application of the "continuing threat" aggravating circumstance to this case violated Appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution, and Article II, §§ 7 and 9 of the Oklahoma Constitution because as currently interpreted and applied it created the risk of arbitrary and capricious imposition of the death sentence. |
| Proposition XIV: | The instructions on the issue of mitigation permitted the jurors to ignore mitigating evidence altogether, and seriously diminished the effect of the mitigating evidence present in the case. Accordingly, such instructions violated Appellant's rights under the Eighth and |

Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution.

Proposition XV:   The accumulation of error in this case deprived Appellant of due process of law and a reliable sentencing proceeding, therefore necessitating reversal pursuant to the Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution.

(Dkt. # 14, Ex. 1).  On January 24, 2001, in Case No. F-1998-693, the OCCA affirmed the judgment and sentence for First Degree Murder (Count I), and reversed and remanded for a new trial the judgment and sentence for Felonious Possession of a Firearm (Count II).  Pickens v. State, 19 P.3d 866 (Okla. Crim. App. 2001).[2]  Petitioner filed a petition for writ of *certiorari* at the United States Supreme court.  However, on June 28, 2002, his petition was denied.  Pickens v. Oklahoma, 536 U.S. 961 (2002).

On March 10, 2000, Petitioner filed his first application for post-conviction relief. Represented by attorneys Bryan L. Dupler and Laura M. Arledge, he raised seven (7) propositions of error, as follows:

Proposition 1:   The admission into evidence of statements obtained during custodial interrogation, which agents of the State failed to electronically record without justification, violates the Oklahoma constitutional privilege against self-incrimination and the Fifth and Fourteenth Amendments to the United States Constitution.

Proposition 2:   Execution of Mr. Pickens, who is mentally retarded and suffers organic brain damage, violates the state and federal constitutional prohibitions against cruel and/or unusual punishments because it offends contemporary standards of decency.  A wealth of opinion survey data shows that Americans are opposed to execution of persons with Mr. Pickens' mental disabilities. This Court should consider this data, along with legislative enactments outlawing such

---

[2]On August 8, 2001, the state district court dismissed Count II at the state's request.  See www1.odcr.com.

6

punishments, and hold that execution of the mentally retarded violates the state and federal constitutions.

Proposition 3:   Appellate counsel's failure to challenge the constitutionality of the court's instruction on the capital sentencing option of life without parole and to fully investigate the prejudicial effect of that instruction denied Mr. Pickens a reliable sentencing proceeding, due process of law, and the effective assistance of counsel.  But for counsels' failure to raise this issue, there is a reasonable probability that the outcome of the trial would have been different.

Proposition 4:   Trial and appellate counsels' failure to investigate and present mitigating evidence denied Mr. Pickens an individualized sentencing determination and the effective assistance of counsel.  Post-conviction relief should be granted and the sentences should be vacated.

Proposition 5:   Mr. Pickens' conviction for feloniously possessing a firearm should be dismissed because it is barred by double jeopardy and constitutes multiple punishments for a single course of conduct. Appellate counsel rendered ineffective assistance when he [failed] to raise a claim that possession of a firearm is included in the offense of felony murder by robbery with a firearm. Because the same evidence was used to prove the felony murder charge and the possession of a firearm, the conviction and punishment for feloniously possessing a firearm violate 21 O.S. § 11A, Art. 2 Section 21 of the Oklahoma, and the Fifth and Fourteenth Amendments of the United States Constitution.

Proposition 6:   Because Oklahoma's elected judiciary is not adequately shielded from the pressures of public opinion to insure independence and impartiality of judgment, execution of Mr. Pickens' sentence would constitute cruel and unusual punishment under the Eighth Amendment.

Proposition 7:   Appellate counsel's failure to challenge the current clemency scheme denied Mr. Pickens reasonably effective assistance of counsel. Because the clemency process currently violates minimal standards of due process, counsel's failure to challenge the scheme on direct appeal violates Mr. Pickens' rights to effective counsel, due process of law, and freedom from cruel and unusual punishment.

(Dkt. # 14, Ex. 5).  In an unpublished opinion, filed August 30, 2001, in Case No. PCD-2000-285,

the OCCA denied the request for post-conviction relief.  See Dkt. # 14, Ex. 6.

On August 2, 2002, after issuance of <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002) (finding that execution of mentally retarded persons violates the Eighth Amendment), Petitioner filed a second application for post-conviction relief in OCCA Case No. PCD-2002-983.  Represented by attorney Vicki Ruth Werneke, he raised two claims, as follows:

> Ground 1:   In light of the Supreme Court's recent ruling that executions of the mentally retarded are cruel and unusual punishment, Petitioner's death sentence should be vacated and modified to a non-capital sentence.  In the alternative, this case should be remanded for an evidentiary hearing to determine whether Petitioner's mental disabilities bar his execution.

> Ground 2:   The trial court's failure to instruct the jury that a critical factor in the sentencing stage had to be found beyond a reasonable doubt deprived Mr. Pickens of a fair sentencing determination in violation of the Oklahoma Constitution and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

<u>See</u> Dkt. # 14 at 7. By Order filed July 23, 2003, the OCCA denied relief on ground 2 and remanded ground 1 to the state district court for a jury determination on the issue of mental retardation.  <u>See</u> <u>Pickens v. State</u>, 74 P.3d 601 (Okla. Crim. App. 2003).  The state district court conducted a jury trial on February 17-19, 2004.   The jury found that Petitioner is not mentally retarded.   Petitioner appealed the verdict to the OCCA. On December 7, 2005, the OCCA reversed the verdict of the jury and modified Petitioner's sentence to life without the possibility of parole.  <u>Pickens v. State</u>, 126 P.3d 612 (Okla. Crim. App. 2005). On April 6, 2006, the State of Oklahoma filed a petition for writ of *certiorari* in the United States Supreme Court challenging the grant of post-conviction relief.  The petition was denied on October 2, 2006. <u>Oklahoma v. Pickens</u>, 549 U.S. 941 (2006).

Petitioner, appearing *pro se*, commenced this federal habeas corpus action on July 5, 2006. At the direction of the Court, Petitioner filed an amended petition (Dkt. # 7) on August 15, 2006. He identifies the following four (4) grounds of error:

1.      Probable cause – the arrest warrant was illegal.
            Officer Elliott lied about the ballistic report to obtain illegal arrest warrant.

2.      Denied rights to counsel by being subjected to custodial interrogation.
            No attorney was present during the interview. Petitioner and court-appointed
            counsel who was already representing him in Tulsa County prosecutions.
            This attorney if made aware that Petitioner was a suspect in another
            homicide, undoubtedly would have told Petitioner not to talk to the police
            without first conferring with counsel. Petitioner is an individual of low
            normal intelligence who functions at a mental age of nine to ten years.

3.      See proposition 5 of Appellant brief – the trial court committed reversible error by
         allowing prosecution to introduce in the first stage of trial evidence of other crimes.

4.      Insufficient evidence to sustain a conviction.
            There is no evidence linking Petitioner to the crime except his statements to
            Fugate and Duncan, which were untrue.

(Dkt. # 7).  In response to the amended petition, Respondent asserts that this Court is precluded from

considering Petitioner's Fourth Amendment claim based on the holding of Stone v. Powell, 428 U.S.

465 (1976), and that Petitioner is not entitled to habeas corpus relief on his remaining claims under

28 U.S.C. § 2254(d).  See Dkt. # 14.

## ANALYSIS

### A.  Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion

requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). The

Court finds that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case. In

addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Michael

Williams v. Taylor, 529 U.S. 420 (2000).

**B.  Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, the OCCA adjudicated Petitioner's claims on direct appeal. Therefore, to the extent the claims are cognizable in a federal habeas corpus proceeding, they shall be reviewed pursuant to § 2254(d).

### 1.  Failure to suppress evidence obtained in violation of the Fourth Amendment

As his first proposition of error, Petitioner asserts that his conviction was obtained based on the introduction of evidence resulting from an unconstitutional arrest.  Petitioner contends, as he did on direct appeal, that his confession should have been suppressed because the affidavit in support of his arrest warrant contained false information provided by Officer Elliott and without the false information, the authorities would have lacked probable cause for his arrest.  See Dkt. # 1. On direct appeal, the OCCA rejected Petitioner's claim, finding as follows:

We have reviewed Elliott's testimony and the affidavit and find Appellant has not established by a preponderance of the evidence that Elliott's statements were made in reckless disregard of the truth or with an intent to mislead. In the affidavit, Elliott did not say the similarities were that the projectiles all had six lands, six grooves and a right hand twist; nor did he say that the results showed an exact match. At most, any ambiguity in Elliott's statements concerning the similarities noted on the projectiles arose from his own unfamiliarity with ballistics testing in general and not from an intent to willfully deceive or out of reckless disregard for the truth.

However, even if this Court were to find Elliott's averments regarding the ballistics test were falsehoods or were made with reckless disregard for the truth, this would not render the arrest warrant void, if probable cause for the warrant was otherwise provided by the affidavit. Skelly v. State, 1994 OK CR 55, ¶ 22, 880 P.2d 401, 406; see also Franks, 438 U.S. at 158, 98 S.Ct. at 2677. In addition, if we were to find Elliott omitted material information-the specific statement that the tests revealed similarities but were not an exact match-we would still determine whether probable cause existed for the issuance of the arrest warrant "by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996), citing Stewart v. Donges, 915 F.2d 572, 582, n.13 (10th Cir. 1990). In either of these situations, we believe the magistrate was presented with facts sufficient to justify issuance of the warrant for Pickens' arrest.

Pickens, 19 P.3d at 873-74.

In Stone v. Powell, 428 U.S. 465, 494 (1976), the Supreme Court held that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. The Tenth Circuit has reiterated that a federal habeas corpus court need not address a Fourth Amendment question as long as the state court has given the petitioner a full and fair opportunity for a hearing on the issue. Miranda v. Cooper, 967 F.2d 392, 400-01 (10th Cir. 1992); Gamble v. State, 583 F.2d 1161, 1165 (10th Cir. 1978).

In the instant case, the record demonstrates that the state courts granted Petitioner a full and fair opportunity to litigate his Fourth Amendment claim alleging that his confession should have been suppressed because it was obtained following an unconstitutional arrest. Prior to his

11

preliminary hearing, Petitioner filed a motion to suppress, alleging that the arrest warrant contained misleading and incorrect information about the ballistics tests. The motion was overruled at preliminary hearing. See Prelim. Hr'g Trans., dated June 5 and 6, 1995, at 138. On July 17, 1996, Petitioner filed a second motion to suppress. The trial court held an evidentiary hearing on the motion. See Trans. Evid. Hr'g, dated November 12, 1996. On November 13, 1996, the second motion to suppress was denied. See O.R. Vol. 4 of 5 at 651. As indicated above, Petitioner also challenged the constitutionality of the arrest warrant and admission of his confession on direct appeal. See Pickens, 19 P.3d at 872-74. The OCCA rejected the claim. Id.

After examination of the record, the Court concludes that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim challenging the validity of his arrest and the admission of his confession in the state courts. As a result, this Court is precluded from considering the Fourth Amendment issue raised in Petitioner's petition for a writ of habeas corpus based on Stone, 428 U.S. at 494. See also Gamble, 583 F.2d at 1165 (opportunity for full and fair litigation in state court under Stone v. Powell includes opportunity to raise Fourth Amendment claim, full and fair evidentiary hearing, and recognition and application of correct Fourth Amendment standards). Therefore, the Court concludes that Petitioner in not entitled to habeas corpus relief on his Fourth Amendment claim.

### 2. Custodial admissions

As his second proposition of error, Petitioner alleges that his Fifth and Sixth Amendment rights were violated because he did not have counsel present during his pre-arraignment interview with Creek County officials even though he had already been appointed counsel in the Tulsa County cases. On direct appeal, Petitioner challenged the admission of his pre-arraignment confession in

both Propositions II and III.  In Proposition II, he asserted that his Sixth Amendment right to counsel was violated because the Creek County officials who interrogated him knew that he had appointed counsel in Tulsa County and nonetheless interrogated him without counsel present and without contacting his Tulsa County attorney or asking if he wanted to consult with that attorney prior to or during the interrogation.  In Proposition III, he argued that his Creek County confession should have been suppressed because after he had invoked his right to counsel in Tulsa County, his request was ignored and Tulsa County officials continued to interrogate him.  As a result, all subsequent statements, including his Creek County statements, were unconstitutionally obtained and should have been suppressed.

The OCCA rejected both of Petitioner's challenges to the admission of his pre-arraignment custodial statements.  As to Proposition II, the OCCA relied on McNeil v. Wisconsin, 501 U.S. 171, 174-83 (1991) (holding that the right to counsel in one case does not invoke the Fifth Amendment right to counsel during interrogation on other unrelated charges), and ruled that "Appellant has not shown admission of his confession to Creek County law enforcement violated his right against self-incrimination and Proposition II is therefore denied."  Pickens, 19 P.3d at 875.  As to Proposition III, the OCCA relied on its opinion entered in Petitioner's direct appeal from his Tulsa County convictions, Pickens v. State, 850 P.2d 328, 333-34 (Okla. Crim. App. 1993) (finding that because Petitioner re-initiated discussion with officers after he had previously requested counsel, he had waived his previous invocation of the right to counsel), and held because it had already determined that the Tulsa County confession was not obtained in violation of Petitioner's Fifth Amendment right to counsel, Petitioner's claim that his subsequent Creek County confession was obtained in violation of the Fifth Amendment was precluded.  See Pickens, 19 P.3d at 875.

13

In <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981), the Supreme Court held that after an accused clearly invokes his right to have counsel present during a custodial interrogation, officers must cease all questioning and may not reinitiate questioning on any matter until counsel is provided. <u>See</u> <u>id.</u> at 484-85 (the "<u>Edwards</u> rule"). The <u>Edwards</u> rule is "designed to prevent police from badgering a defendant into waiving his previously asserted <u>Miranda</u>[3] rights." <u>Michigan v. Harvey</u>, 494 U.S. 344, 350 (1990). Furthermore, "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." <u>Montejo v. Louisiana</u>, — U.S. —, 129 S.Ct. 2079, 2085 (2009) (citations omitted). "[T]he Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." <u>Id.</u> (citations omitted). Neither a defendant's request for counsel at arraignment or similar proceeding nor appointment of counsel by a court give rise to a presumption that any subsequent waiver by the defendant to police-initiated interrogation is invalid. <u>Id.</u> (overruling <u>Michigan v. Jackson</u>, 475 U.S. 625 (1986)). In <u>McNeil v. Wisconsin</u>, 501 U.S. 171 (1991), the Court held that the Sixth Amendment right to counsel is offense-specific.

This Court finds that Petitioner has failed to demonstrate that the OCCA's resolution of his challenges to the constitutionality of his pre-arraignment confession was contrary to or an unreasonable application of Supreme Court law. Petitioner had not yet been arraigned on the Creek County charges at the time of his audio-taped confession. As a result, his Sixth Amendment right to counsel had not yet attached. <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972) (stating that the Sixth Amendment right to counsel does not attach until "the initiation of adversary judicial criminal

---

[3]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

proceedings whether by way of formal charge, preliminary hearing, indictment, information, or arraignment"). Furthermore, Petitioner's invocation of his right to counsel in the Tulsa County case did not serve to invoke his Sixth or Fifth Amendment right to counsel during his interrogation on the Creek County robbery/homicide. McNeil, 501 U.S. at 174 (holding that police do not violate the Sixth Amendment by initiating an interrogation of a defendant about uncharged crimes). Sheriff Larry Fugate testified that prior to questioning Petitioner concerning the Creek County crimes, he read Petitioner his Miranda rights and Petitioner signed a rights waiver card. See Tr. Trans. Vol. III at 545-46, 562-63. The trial court reviewed the transcript of the in camera hearing held during Petitioner's first trial to determine the voluntariness of Petitioner's confession, see id. at 553, and overruled Petitioner's motion to suppress.  This Court finds that the OCCA's resolution of Petitioner's claims challenging the constitutionality of his pre-arraignment confession did not rest upon an objectively unreasonable application of Edwards, Montejo, and McNeil to the facts of this case.  Petitioner is not entitled to habeas corpus relief.  28 U.S.C. § 2254(d).

### 3.  Introduction of other crimes evidence

As his third proposition of error, Petitioner refers to Proposition V of his direct appeal brief and argues that the trial court committed reversible error by allowing the prosecution to introduce evidence of other crimes during the first stage of trial. In Proposition V of his direct appeal, Petitioner complained of testimony concerning his arrest in Tulsa County, testimony concerning "previous trials," the title of Jury Instruction 14, and the jury's opportunity to view the unredacted transcript of his tape-recorded interview, all on the basis of other crimes evidence.  However, in his habeas petition (Dkt. # 7), Petitioner specifically complains of only one instance of other crimes evidence: when, for a short time, the jury was given copies of the unredacted transcript of his

15

confession containing multiple references to his prior felony convictions and to the robberies in

Tulsa County.  In support of his habeas claim, Petitioner provides the following statement of facts:

> The facts are that for an [un]determined period of time, multiple copies of the unredacted transcript, probably one for each juror, were in the possession of the jury. The jurors had these transcripts long enough for part of the tape to be played, and then continued to possess them while the lawyers argued at the bench.   The transcripts were not gathered up until the lawyers had finished arguing and the jury was sent home.  (*See* Tr. III 564-570) The jurors were reading the transcripts as the tape was being played and the tape continued to be played until the bench conference.  Accordingly, they were not at page one when the tape was stopped. (*See* Tr. III 574, 592) If any of the jurors happened to glance at page 7 (referring to Court's Ex. 4), which they may have already been on when the recording was stopped, they would have seen that Appellant had [sic] could not buy any more bullets for the gun because he had been convicted of two felonies.  If they looked at the next page (page 8) they would see that these were convictions for armed robberies when Appellant was only 18-years-old.  If they had glanced at page 10, they would have seen that Bass gave Appellant the gun a long time before the night of the robberies in Tulsa.  On page 13, in the course of Fugate's statements about the similarities between the bullets discovered in the robbery, Fugate explained that the gun was the same gun used in two other robberies in Tulsa, one of them being in Berryhill.  If one of the jurors had happened to glance at page 14, he/she would have seen that during the break, Appellant referenced the need to get back to Tulsa before his belongings were disturbed, and that Fugate responded they would get him back there as soon as he had seen the judge, obviously meaning the judge in Creek County.  All of these references are in the first part of the transcript, where the jurors could easily read them.

See Dkt. # 7.  Petitioner raised this claim on direct appeal.  The OCCA rejected the claim, finding

that:

> Nothing in the record shows that in fact jurors were exposed to any prejudicial other crimes evidence.  The transcript shows the jury had the original unredacted transcription until defense counsel objected to page 7.  Further, the jurors only retained the transcription for a short time before the court gathered the transcriptions and recessed for the night.  The trial court stated on the record that it did not believe the jurors read ahead in the transcription prior to recess.  While the unredacted transcription may have contained the complained of references to other crimes evidence, under the circumstances presented here, we cannot find the jury was actually exposed to that evidence as there is no evidence any juror read that far ahead in the unredacted transcription.

Pickens, 19 P.3d at 877 (footnote omitted).  Thus, the OCCA reviewed the evidence and determined

that there was nothing to indicate that any juror read the unredacted transcript far enough ahead to

be aware of the references to other crimes.  The OCCA also rejected Petitioner's challenges to the

testimony describing his arrest in Tulsa County and Deputy Elliott's testimony concerning "previous

trials."  See id. at 876-77.  However, the OCCA found merit to Petitioner's claim with regard to

Instruction No. 14, and as a result reversed the conviction as to Count 2, Feloniously Carrying a

Firearm.

      "[I]n a habeas proceeding . . . 'we will not question the evidentiary . . . rulings of the state

court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was

rendered fundamentally unfair.'"  Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting

Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)).  "[W]e approach the fundamental fairness

analysis with 'considerable self-restraint.'" Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998)

(quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (*en banc*)).  A proceeding

is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of

justice."  United States v. Russell, 411 U.S. 423, 432 (1973).

      Petitioner's ground three claim challenging the trial court's admission of other crimes

evidence is not cognizable in this habeas corpus proceeding unless Petitioner demonstrates that the

ruling rendered his trial fundamentally unfair. As to his principal claim concerning the jury's

exposure to the unredacted transcript of his interview with Creek County officials, Petitioner makes

only unsupported speculative statements and has presented no evidence to rebut the OCCA's finding

that the jury did not read ahead to the references to other crimes contained in the unredacted

transcript.  The Court concludes that Petitioner has not demonstrated that his trial was rendered

fundamentally unfair by the jury's brief exposure to the unredacted transcripts. Petitioner's request for habeas corpus relief on this claim shall be denied.

Petitioner has also failed to demonstrate that his trial was fundamentally unfair as a result of the introduction of other crimes evidence as raised in Proposition V of his direct appeal. First, Petitioner complains that evidence of other crimes was improperly admitted through the testimony of Officers Smith and White. Prior to his first trial, Petitioner received notice that the State intended to introduce evidence related to the Tulsa County crimes. See O.R. Vol. 1 of 5 at 79. The officers were listed as witnesses in support of the amended information filed April 25, 1995. See O.R. Vol. 4 of 5 at 470-71. Their testimony concerning Petitioner's arrest in Tulsa County served to explain how Petitioner came to be in custody. The testimony was relevant to the Creek County crimes because he was driving a gray Ford Granada at the time of his arrest and a .38 caliber handgun was found on the floorboard of the car. See Tr. Trans. Vol. III at 445-53. Petitioner has not demonstrated that the testimony of Officers Smith and White rendered his trial fundamentally unfair. Next, Petitioner characterizes testimony by George Elliott referring to "previous trials" as an evidentiary harpoon. The record reflects that Deputy Elliott's reference to "previous trials" was responsive to defense counsel's question concerning custody of certain evidence. See id. at 538-39. His answer that some items of evidence had been "with the Court . . . from previous trials" cannot be characterized as an evidentiary harpoon because there is no evidence that the response to defense counsel's question was wilfully jabbed rather than inadvertent.[4] Petitioner has not demonstrated that

---

[4]An "evidentiary harpoon" is a "metaphorical term of art that has been used by several state courts to describe the situation where a government witness, while testifying in a criminal case, deliberately offers inadmissible testimony with the purpose of prejudicing the defendant." United States v. Hooks, 780 F.2d 1526, 1535 n. 3 (10th Cir. 1986) (compiling cases, including Bruner v. State, 612 P.2d 1375, 1378 (Okla. Crim. App. 1980)).

the comment rendered his trial fundamentally unfair. Third, Petitioner has failed to demonstrate that

the erroneously titled jury instruction given during first stage proceedings rendered his trial

fundamentally unfair as to his First Degree Murder conviction. The trial court recognized the error,

issued a corrected instruction, and explained to the jury that the title was erroneous and that the jury

was not to assume that Petitioner had ever been convicted of a felony.  See id. at 867-68.  As

indicated above, the OCCA found on direct appeal that the error was not harmless beyond a

reasonable doubt as to the Felonious Possession of a Firearm conviction and, as a result, reversed

Petitioner's conviction on Count 2.  Pickens, 19 P.3d at 877-78. This Court finds that, in light of the

evidence presented at trial, including Petitioner's confession, the instructional error did not render

Petitioner's trial fundamentally unfair as to his First Degree Murder conviction. In sum, the Court

finds that Petitioner is not entitled to habeas relief on his claims challenging the introduction of other

crimes evidence because he has not demonstrated that the evidence introduced was "so unduly

prejudicial that it render[ed] the trial fundamentally unfair." Welch v. Sirmons, 451 F.3d 675, 692

(10th Cir. 2006) (quoting Payne v. Tennessee, 501 U.S. 808, 825 (1991)), *abrogation on other*

*grounds recognized by* Wackerly v. Workman, 580 F.3d 1171 (10th Cir. 2009).

### 4. *Sufficiency of the evidence*

As his fourth ground of error, Petitioner challenges the sufficiency of the evidence

supporting his conviction, asserting that "there is no evidence linking Petitioner to the crime except

his statements to Fugate and Duncan, which were untrue."  See Dkt. # 7.  The OCCA rejected the

claim, citing Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985), and finding that "there was

sufficient evidence to support the jury's finding that Appellant committed the crimes charged

beyond a reasonable doubt, and Proposition IV accordingly fails." Pickens, 19 P.3d at 876.  Because

the OCCA adjudicated this claim on the merits, Petitioner is entitled to federal habeas relief only

if he can establish that the OCCA's decision was contrary to or involved an unreasonable application

of Supreme Court law, or was based on an unreasonable determination of the facts in light of the

evidence. 28 U.S.C. § 2254 (d)(1)(2).

The appropriate standard of review for sufficiency of evidence claims is "whether, 'after

viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the [petitioner guilty] beyond a reasonable doubt.'" Dockins v. Hines, 374 F.3d 935, 939

(10th Cir. 2004) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "This standard of review

respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the

testimony presented at trial." Id. "Because '[s]ufficiency of the evidence is a mixed question of law

and fact[, w]e ask whether the facts are correct and whether the law was properly applied to the

facts, which is why we apply both 28 U.S.C. § 2254(d)(1) and (d)(2) when reviewing sufficiency

of the evidence on habeas.'" Diestel v. Hines, 506 F.3d 1249, 1267 (10th Cir. 2007) (quoting

Maynard v. Boone, 468 F.3d 665, 673 (10th Cir. 2006)). The question to be resolved is "whether

the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of

the Jackson standard." Patton v. Mullin, 425 F.3d 788, 796 (10th Cir. 2005).

When applying the Supreme Court's sufficiency standard established in Jackson, the Court

looks to Oklahoma law to determine the substantive elements of the crime of first degree felony

murder. Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003); Wingfield v. Massie, 122 F.3d

1329, 1332 (10th Cir. 1997). In this case, Petitioner was convicted of first degree felony murder. <u>See</u>

Okla. Stat. tit. 21, § 701.7(B) (Supp. 1990).[5]  His jury was instructed as follows:

> No person may be convicted of murder in the first degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are: <u>First</u>, the death of a human; <u>Second</u>, the death occurred as a result of an act or event which happened in the commission of robbery with a dangerous weapon; <u>Third</u>, caused by the defendant while in the commission of a robbery with a dangerous weapon; <u>Fourth</u>, the elements of the robbery with a dangerous weapon the defendant is alleged to have been in the commission of are as follows: <u>First</u>, wrongful; <u>Second</u>, taking; <u>Third</u>, carrying away; <u>Fourth</u>, personal property; <u>Fifth</u>, of another; <u>Sixth</u>, from the person or the immediate presence of another; <u>Seventh</u>, by force or fear; <u>Eighth</u>, through use a firearm or dangerous weapon.

<u>See</u> O.R. Vol. 5 of 5 at 771, Instruction No. 11. In accordance with Oklahoma law, Petitioner's jury

was also instructed regarding the meaning of "commission of robbery" as follows:

> A person is in the commission of robbery with a dangerous weapon when he/she is performing an act which is an inseparable part of or performing an act which is necessary in order to complete the course of conduct constituting a robbery with a dangerous weapon.

<u>See</u> <u>id.</u> at 772, Instruction No. 12.

Petitioner argues that there was no corroborating evidence supporting his confession.

However, the OCCA determined that the State did introduce evidence that corroborated Petitioner's

---

[5]The felony murder statute in effect at the time of Petitioner's crime provided as follows:

> A person also commits the crime of murder in the first degree when he takes the life of a human being, regardless of malice, in the commission of forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary, first degree arson, unlawful distributing or dispensing of controlled dangerous substances, or trafficking in illegal drugs.

Okla. Stat. tit. 21, § 701.7(B) (Supp. 1990).

confession.  Petitioner has failed to present clear and convincing evidence to rebut the following statement of corroborative facts provided by the OCCA:

> In this case, the State provided sufficient corroborative evidence independent of Pickens' confession to show its trustworthiness and competence. The store manager testified the store clerk's car was blue and was parked in the lot. Pickens stated in his confession there was a blue car in the lot. Pickens admitted he fired four times, and the store clerk was in fact shot four times. On appeal, Appellant makes much of the fact that five bullets were recovered, not four. However, we find this inconsistency not so glaring as to outweigh the obvious similarity that multiple gunshots were fired. A .38 caliber weapon was found in Pickens' car; the lead bullets recovered were .38 caliber and ballistics could not exclude the possibility they were fired from the gun found in Pickens' car. Pickens admitted he obtained rolled money in the robbery. The store manager testified coin rolls were taken in the robbery. Appellant said the store clerk reached under the counter to get the change and put the money in a brown paper (candy) sack; both the change box and the small brown sacks were located directly beneath the register. Despite some inconsistencies in Pickens' confession, we find the State presented sufficient independent evidence to corroborate the confession.

Pickens, 19 P.3d at 875-76. In the absence of rebuttal evidence, the OCCA's statement of facts is entitled to a presumption of correctness. Saiz v. Ortiz, 392 F.3d 1166, 1175 (10th Cir. 2004). Those facts corroborate Petitioner's confession. Accordingly, the OCCA's rejection of Petitioner's challenge to the sufficiency of the evidence was not based on an unreasonable determination of the facts. Furthermore, after viewing the evidence cited by the OCCA in the light most favorable to the prosecution, the Court concludes that the evidence was sufficient to allow the jury as a rational trier of fact to have found the essential elements of First Degree Felony Murder beyond a reasonable doubt. Jackson, 443 U.S. at 319. The OCCA's conclusion that the evidence was sufficient was not an unreasonable application of the Jackson standard.

In summary, the Court finds the adjudication of Petitioner's ground four claim by the OCCA was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).  Further, the

adjudication of this claim did not involve an unreasonable determination of the facts in light of the

evidence presented at trial.  28 U.S.C. § 2254(d)(2).  Petitioner is not entitled to relief on this claim.

### *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has

not established that he is in custody in violation of the Constitution or laws or treaties of the United

States.  His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.      The petition for a writ of habeas corpus (Dkt. # 1), as amended (Dkt. # 7), is **denied**.

2.      A separate Judgment in favor of Respondent shall be entered in this case.

DATED THIS 10th day of November, 2009.

_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE